# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | |
|---|---|
| Stacey H., | ) |
|     *Plaintiff*, | ) <br> ) <br> )    Case No. 3:20-cv-50112 |
| v. | ) <br> )    Magistrate Judge Lisa A. Jensen |
| Kilolo Kijakazi, <br> Acting Commissioner of Social Security,[1] <br>     *Defendant*. | ) <br> ) <br> ) <br> ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Stacy H. brings this action under 42 U.S.C. § 405(g) seeking reversal or a remand of the decision denying her disability insurance benefits.[2] For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded.

### I. Background

In June 2016, Plaintiff applied for social security disability insurance benefits alleging she became disabled on April 15, 2016. Plaintiff alleged that she was unable to work as of the date of her disability primarily due to her chronic neck and back pain with associated numbness in her arms and legs.

Following a hearing, an administrative law judge ("ALJ") issued a decision on February 26, 2019, finding that Plaintiff was not disabled. The ALJ determined that Plaintiff's impairments did not meet or medically equal a listed impairment. The ALJ specifically found that Plaintiff's

---

[1] Kilolo Kijakazi has been substituted for Andrew Marshall Saul. Fed. R. Civ. P. 25(d).
[2] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c).

degenerative disc disease did not meet or medically equal Listing 1.04. R. 20. The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work with certain restrictions. Plaintiff was 47 years old at the time of the ALJ's decision.

Plaintiff appeals the ALJ's decision arguing that the ALJ erred in analyzing whether she met or medically equaled Listing 1.04(A).[3] Therefore, although the record demonstrates that Plaintiff sought medical treatment for a number of conditions, this Court will focus on the evidence relevant to the ALJ's Listing 1.04(A) analysis in the discussion below.

## II. Standard of Review

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Accordingly, the reviewing court is not to "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).

However, the Seventh Circuit has emphasized that review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (a "mere scintilla" is not substantial evidence). A reviewing court must conduct a critical review of the evidence before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Even when

---

[3] In her opening brief, Plaintiff also challenges the ALJ's RFC determination and subjective symptom evaluation. However, in her reply brief Plaintiff abandons these arguments. Accordingly, the Court will not address them. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (explaining that failing to respond to an argument in a response brief results in waiver). However, Plaintiff should raise any of these concerns with the ALJ on remand.

adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Moreover, federal courts cannot build a logical bridge on behalf of the ALJ. *See Mason v. Colvin*, No. 13 C 2993, 2014 WL 5475480, at *5-7 (N.D. Ill. Oct. 29, 2014).

### III. Discussion

Plaintiff argues that reversal or remand is proper because the ALJ failed to adequately analyze whether her back condition, including cervical, lumbar, and thoracic disc disease with peripheral neuropathy, meets or medically equals the criteria of Listing 1.04(A).

A claimant is eligible for benefits if she has an impairment that meets or equals an impairment found in the listing of impairments. 20 C.F.R. § 404.1520(d). The listings specify the criteria for impairments that are considered presumptively disabling. 20 C.F.R. § 404.1525(a). A claimant may also demonstrate presumptive disability by showing that his impairments are accompanied by symptoms that are equal in severity to those described in a specific listing. 20 C.F.R. § 404.1526(a). Therefore, at step three of the sequential evaluation process, in "considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than perfunctory analysis of the listing." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (quoting *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)).

Listing 1.04 addresses spinal disorders, including degenerative disc disease that result in compromise of a nerve root or the spinal cord. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04. Listing 1.04(A) requires "evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and if there is involvement

of the lower back, positive straight-leg test (sitting and supine)." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04(A).

Here, the ALJ found that Plaintiff's degenerative disc disease of the cervical, lumbar, and thoracic spine as well as her peripheral neuropathy constituted severe impairments. R. 17. However, the ALJ's listing analysis regarding whether Plaintiff met or equaled Listing 1.04(A) consisted of the following two-sentence statement:

> The claimant's degenerative disc disease does not meet or medically equal Listing 1.04 of the Appendix 1 impairments. The record fails to demonstrate nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss and positive straight leg raising (1.04A).

R. 20. Plaintiff argues that this is the type of perfunctory analysis that the Seventh Circuit has found to be inadequate. This Court agrees. In *Minnick*, the ALJ merely stated that the plaintiff's degenerative disc disease did not meet or equal Listing 1.04 because "[t]he evidence does not establish the presence of nerve root compression, spinal arachnoiditis, or spinal stenosis resulting in pseudoclaudication, as required by that listing." 775 F.3d at 935. The court in *Minnick* noted that this statement provided no analysis to support the ALJ's conclusion. *Id.* at 935-36 (remanding because the ALJ's two-sentence discussion contained "no analysis whatsoever" and was "the very type of perfunctory analysis we have repeatedly found inadequate"). The ALJ's two-sentence listing statement here also contains no analysis and for that reason it is cursory and deficient.

The Commissioner does not contest that the ALJ's analysis was cursory. Instead, the Commissioner argues that after the step three analysis the ALJ discussed the medical evidence and this discussion supports the ALJ's finding that Listing 1.04(A) was not met. While the Court will not discount the ALJ's listing analysis just because it appears elsewhere in the opinion, the Commissioner has not explained how the medical evidence discussed later in the opinion

constitutes the ALJ's listing analysis. It is true that the ALJ summarized Plaintiff's medical evidence. However, in her summary she makes no reference to any listing. A mere summary is not the same as meaningful analysis. *See Edmonson v. Colvin*, No. 14 CV 50135, 2016 WL 946973, at *4 (N.D. Ill. Mar. 14, 2016) ("It is true that the ALJ engaged in a fairly lengthy recitation of the medical evidence, but this was mostly a long chronology of doctor visits with little commentary or analysis. Even when the ALJ offered some fleeting commentary, he never connected it back to the specific 1.04(A) requirements."); *Chuk v. Colvin*, No. 14 C 2525, 2015 WL 6687557, at *8 (N.D. Ill. Oct. 30, 2015) ([S]ummarizing a medical history is not the same thing as analyzing it, in order to build a logical bridge from evidence to conclusion."); *Alevaras v. Colvin*, No. 13 C 8409, 2015 WL 2149480, at *4 (N.D. Ill. May 6, 2015) ([M]erely summarizing medical evidence is not the same thing as analyzing it and explaining how the evidence supports the conclusion that the claimant is not disabled.").

Moreover, in examining the chronology that the ALJ sets forth after her step three analysis she lists (without discussion) many findings supportive of Listing 1.04(A). For example, while she states at step three that the record fails to demonstrate "limitation of motion of the spine," she then goes on in the next section to state "[e]xams showed decreased range of motion of the cervical and lumbar spine (6F/5-6, 14F/5)." R. 21. In addition, her medical record chronology reports MRI evidence of spinal cord compression, hand/leg numbness diagnosed as peripheral neuropathy, and abnormal EMG results in the bilateral lower extremities indicative of possible bilateral S1 radiculopathy. R. 21. While these findings could be consistent with Listing 1.04(A), the ALJ makes no comment one way or the other as to what impact these findings had on her listing analysis.

The ALJ does note the following near the end of her medical record chronology in conjunction with her RFC analysis: "Additionally, although the claimant has peripheral

neuropathy and obesity, exams frequently showed 5/5 strength in the upper and lower extremities, normal reflexes, and can do heel, toe and tandem gait." R. 22. However, this Court's review of the record reveals numerous findings of abnormal strength in the upper and lower extremities, abnormal reflexes in the upper and lower extremities, and difficulty with heel/toe movement. For example, Plaintiff has been diagnosed with hyperreflexia, including abnormal reflexes in the upper and lower extremities R. 624. Dr. Arbona stated that her numbness and hyperflexia probably come from cord involvement. R. 624. Consultative examiner Dr. Ramchandani found decreased strength in the lower extremities, including difficulty squatting. While he stated that Plaintiff could walk on her heels and toes, Dr. Ramchandani noted that in doing so she had to lean on the table for support. R. 468. Moreover, the record contains numerous findings of decreased strength in the upper extremities as well. R. 536, 551-53, 619. An ALJ cannot cherry-pick the records by relying on those that support her opinion and ignoring those that do not. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."). Thus, even the limited RFC analysis that appears later in the opinion does not accurately summarize the records or provide substantial evidence to support the ALJ's finding that Plaintiff does not meet or equal Listing 1.04(A). In sum, this Court does not consider the ALJ's subsequent medical record chronology sufficient to support her two-sentence statement regarding Listing 1.04.

Next, the Commissioner argues that the ALJ relied on the opinions of the state agency physicians that a listing was not met. There are several problems with this argument. First, there is no evidence in the record that the ALJ in fact relied upon the state agency physician opinions to support her step three finding. The Commissioner concedes this point but argues that this error "is

harmless because she subsequently considered and discussed these opinions." Defendant's Response at 4, Dkt. 25. However, the ALJ's subsequent discussion of the state agency physician opinions was in regard to their opinion concerning Plaintiff's RFC. Even then, she gave the state agency physicians opinions only "some weight" because "evidence received at the hearing level shows that the claimant is more limited than determined by the State agency consultants[.]" R. 23. As such, this Court cannot say with great confidence that on remand the ALJ would rely on the state agency physicians to support her step three finding. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013) (finding an error harmless only when a court can "predict with great confidence that the result on remand would be the same").

Most importantly, however, this Court agrees with Plaintiff that on this record it would be improper for the ALJ to rely on the state agency physicians' opinions regarding whether Plaintiff met Listing 1.04 without the benefit of various records that the state agency physicians did not have at the time they rendered their opinions. *See Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018), *as amended on reh'g* (Apr. 13, 2018) ("An ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion.").

Here, Plaintiff points out that the state agency physicians did not have the following:
- the 2017 MRI of the cervical spine which showed an annular bulge with minimal encroachment at C5/6; disc bulge contacting the ventral cord which is slightly flattened at C6/7. R. 481;
- the 2017 MRI of the thoracic spine which showed disc protrusion with mild flattening of the right anterior cord with right lateral recess encroachment at T9/10; disc

7

- protrusion with migration and contact with the ventral cord with reniform cord morphology at T10/11. R. 482;
- the 2017 MRI of the lumbar spine that showed annular bulge barely contacting the ventral sac and minimal left foraminal encroachment at L4/5; annular bulge, lateral recess encroachment, facet arthrosis, and foraminal stenosis moderate on the right and minimal on the left at L5/S1. R. 483;
- the July and September 2018 records of Dr. Arbona who noted "major compression" of the spinal cord, "compression of the thoracic cord," and impact on the "cervical cord." R. 612, 626.
- The EMG of Plaintiff's lower extremities showing absent bilateral H soleus response consistent with bilateral S1 radiculopathy. R 512.

The above evidence is significant especially for purposes of analyzing whether a claimant meets Listing 1.04. *See Ivy v. Saul*, No. 1:19-CV-380-JD, 2020 WL 4463160, at *5 (N.D. Ind. Aug. 4, 2020) ("The ALJ's reliance on the state agency opinions fails when the state agency physicians did not have access to the CT scan that showed a compromised spinal cord.").[4]

Finally, the Commissioner argues that the burden remains on Plaintiff to establish that her impairment meets or equals an impairment enumerated in the listings. However, Plaintiff listed ample evidence that could establish that she met or medically equaled Listing 1.04(A). With regard to nerve root compression, Plaintiff points to the 2017 MRIs of the cervical, thoracic, and lumbar spine that all show cord compression as well as Dr. Arbona's records, which diagnose "major compression" of the spinal cord, compression of the thoracic cord, and impact on the cervical cord.

---

[4] Because the state agency physicians did not have updated and relevant medical records it was similarly improper for the ALJ to rely on their opinions to support a finding that Plaintiff's symptoms did not equal Listing 1.04(A).

With regard to neuro-anatomic distribution of pain, Plaintiff points to numerous references to radicular pain and sciatic pain. Specifically, the record reveals evidence of cervical pain with upper extremity radiculopathy. R. 491, 532-33. Dr. Bear noted that Plaintiff's neck pain and radicular symptoms may be related to cervical spine abnormalities with narrowed spinal canal with possible nerve root impingement and clear signs and symptoms of impingement syndrome. R. 532-33. With regard to the lower extremities, consultative examiner Dr. Ramchandani noted pain in the paraspinal region of the thoracolumbar spine and in the thighs, with decreased range of motion. Plaintiff had reduced sensation to pin prick in the legs. Dr. Ramchandani diagnosed Plaintiff with lumbar stenosis with radiculopathy of the lower extremity secondary to spondylolisthesis. R 468-69. EMG of the lower extremities also confirmed findings consistent with bilateral S1 radiculopathy. R. 512.

Regarding the other required findings under Listing 1.04, Plaintiff points to evidence of limitation of motion of the spine. R. 472. As set forth above, the ALJ affirmatively stated that Plaintiff's "[e]xams showed decreased range of motion of the cervical and lumbar spine (6F/5-6, 14F/5)." R. 21. The record also reveals evidence of atrophy in her left leg. R. 468. There is also evidence of muscle weakness in the lower extremities as well as abnormal reflexes. R. 468. Weakness in the upper extremities is also supported by the records, R. 551-53, as is abnormal reflexes in the arms. R. 623-24. The above evidence is at the very least indicative of meeting Listing 1.04(A).

The Commissioner does not deny that these findings could be consistent with Listing 1.04(A). The Commissioner argues only that by pointing to "various tests and notes in the record, plaintiff has also failed to demonstrate that her degenerative disc disease met or equaled Listing 1.04 for the durational requirement of the Act." Defendant's Response at 4, Dkt. 25. However, the

ALJ did not base her finding that Plaintiff did not meet Listing 1.04 on the failure of Plaintiff to show that she met all of the listing criteria for the durational requirement of the Act. Under the *Chenery* doctrine, this Court must confine its review to the grounds on which the ALJ made her finding. *See, e.g., Jeske v. Saul,* 955 F.3d 583, 587 (7th Cir. 2020) ("Our review is limited also to the ALJ's rationales; we do not uphold an ALJ's decision by giving it different ground to stand upon."); *Meuser v. Convin*, 838 F.3d 905, 911 (7th Cir. 2016) (finding that where "the ALJ did not rely on this rationale in his opinion, [] the Commissioner cannot now rely on it"). Moreover, Plaintiff's neck and back pain with numbness have been described as chronic and as lasting more than 12 months. R. 414, 491, 632.

The ALJ's finding that Plaintiff's neck and back condition did not meet or medically equal Listing 1.04(A) is not supported by substantial evidence. The ALJ failed to discuss her reasoning and failed to address evidence that may support a finding that Listing 1.04(A) was met. As such, the ALJ's inadequate analysis requires remand.

Finally, this Court declines Plaintiff's request for a direct award of benefits. A direct award of benefits is a "rare step." *Martin v. Saul*, 950 F.3d 369, 371 (7th Cir. 2020). Such an award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion – that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). Here, because the ALJ did not adequately analyze all of the evidence to determine if Plaintiff's condition meets Listing 1.04(A) and did not have the benefit of state agency physicians opinions based on updated medical records this Court cannot say that there is only one conclusion that can be drawn here. This Court finds that remand is the more appropriate course so that the ALJ can reach her conclusions after proper consideration and analysis of all of the relevant evidence.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is granted, and the Commissioner's motion is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceeding consistent with this opinion.

Date: July 16, 2021     By: _/s/ Lisa A. Jensen_
Lisa A. Jensen
United States Magistrate Judge